The Honourable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honourable Court may draw near, give their attendance and they shall be heard. God save the United States of America and this Honourable Court. Good morning, please be seated. Today's cases will be called, as previously announced, and the times will be as allotted to counsel. The first case today is number 20-1660, United States v. Reginald Abraham. Yes, and before we proceed, let me just note briefly two points. One, Judge Lopez is participating in today's argument. He is listening in telephonically, I hope, at this point. I am here. And secondly, a special note, I think this is the first time our court has now sat in person and we see that everyone is not just two-dimensional in two years and it's welcome back. With that, let's proceed. Attorney Feldman Rumpler, please introduce yourself for the record and proceed with your argument. Good morning, Your Honours, and may it please the Court, Leslie Feldman Rumpler for Reginald Abraham. If I may, I would like to reserve two minutes for rebuttal. Yes, you may. This case arises out of an unusual procedural scenario, which is that there is one session of the District Court in the District of Massachusetts that requests advisory fact-finding from the jury on issues relating solely to sentencing guidelines determinations. In this case, the guidelines issue was an enhancement for leadership and the number of people that the defendant led in a sex trafficking case. And this session put the question to the jury on the leadership enhancement at the same time as the jury was finding innocence or guilt. At the charging conference, defense counsel requested bifurcation of the jury deliberations. The court said, I've reflected on that, we're not going to do that, your rights are saved. And when the request was made, it was made with reference to the procedures in death penalty cases, where you've got a guilt phase and then a penalty phase. And the reasons for that have been addressed in many, many opinions in death penalty cases. The court was clearly familiar with that, saying, I reflected on that, I'm not going to do that. Your rights are saved. The issue was preserved. The court then instructed the jury, and at the end of the jury instructions, defense counsel again renewed the request for bifurcation. The court cut counsel off mid-sentence and said, your rights are saved. The government is arguing that there was a waiver because defense counsel did not object to a jury instruction on the jury instruction on the leadership enhancement, which is part of the argument on prejudice here. But it's not the main, it's not the issue in the case. In other words, the issue raised is whether bifurcation, the refusal to bifurcate was an abuse of discretion or not. It seems clear from the citations in the record, you've pointed out that you asked for bifurcation. But then when you point on appeal to the problem or the reason there was a need for anything, you seem to point exclusively to what the judge said regarding coercion, which seems more to be an objection to what the judge said regarding coercion than it does to inwards. If the judge had not said that, it's hard to see any reason for bifurcation. The reason for bifurcation, I would suggest, is a statement from this court in United States v. Colomore. The defendant has the right to be tried only on the crime charged. The jury shouldn't be deliberating on the question of how many people the defendant led in a sex trafficking case unless and until it finds the defendant guilty. Now, it's true the court did tell the jury you don't reach this unless you find guilt. But the issue is this normally isn't here at all, this question of guidelines fact-finding. In fact, the government objected to it because the government opposes the practice in general. And, by the way, the government objected to this particular jury charge saying it's not true that a person cannot be simultaneously coerced and allied with the defendant. The court rejected that argument and the defendant wasn't going to join in it because that instruction was actually in the defendant's favor as to the penalty issue. So, the instruction was helpful to the defense on penalty. The defendant did not want to contest that, was happy with it. What the defendant was not happy with was the simultaneous use of that instruction with the refusal to bifurcate. And it's not only because of the instruction. And the government has argued the evidence was overwhelming in this case. But, in fact, the evidence was more mixed than might appear. In other words, the victims in this case came into court and basically said, you know, this guy sought me out on Facebook, this guy contacted me. As you see, if you look at the sealed appendix, there are Facebook communications that show very much a different story than what they were saying. And that was brought out in cross-examination in some cases. And, in particular, in the case of J.N., the victim who was the only victim that could serve as the basis for a leadership enhancement. The court said, only if you find him guilty as to J.N., can you possibly find a leadership enhancement. And this witness said, the defendant called in six guys to rape her in front of a whole bunch of women that he had sent away and then brought back from Connecticut. None of these women came to court to testify. There was no corroboration of the charge. The victim testified simply that he called in five or six people or six people. The jury found that there were three people. And there was literally nothing in the record to differentiate whether there were three or six or any at all because there was no corroboration of her testimony and there was no detail in her testimony. It was very, very conclusory testimony. But here is this question of leadership coming in in the jury instructions. And the defendant objected to that. Suppose the judge had made no comments about coercion and had simply said, I want you first in questions one through five to adjudicate guilt or innocence and then stop at that point if you've not found her guilt. If and only if you found her guilt, I then want you to go forward and give me advisory opinion on this subject of leadership. What would be the problem with that? For one thing, the other thing that accompanied his comments was he said he did make a mention of sentencing because this is something I will consider if and when there is a sentencing. I don't have the specific wording, but it's in the instruction or it's in there in his comments to the jury. Clearly, if he hadn't made that statement, it would be a better scenario for the defendant. But he did. And it was part of the whole picture. And it was part of the problem with including a penalty question at this point in time. There really was no reason not to do it. Judicially, economy of time really wasn't an issue because the jury was all there. They had heard all the evidence. It would have been a matter of sending them out only with questions relating to guilt. And then they would come back. And if it was a not guilty finding, they're done. If it's a guilty finding, they go back out and they deliberate on this other question with instructions on that other question. But the way this proceeded is defendant asked for bifurcation. It was denied. He gave the instructions. Once they're given, they're given. And the objection to the failure to bifurcate was made. This is not a waiver case. Ms. Feldman-Rumpler, let me interrupt you for a second and ask Judge Lopez if he has any questions. No questions. Thank you. If that's the case, I'll leave the remainder of my time for rebuttal. Thank you very much. Thank you, Attorney Feldman-Rumpler. Attorney Quinlivan, please introduce yourself on the record to begin. Good morning. Judge Kayada, and may it please the court. Mark Quinlivan on behalf of the United States. Let me begin about why we believe that this case should be decided on plain error review, and then point out why, no matter what standard is employed, the defendant's claim fails. If this case were only about the request for bifurcation, the answer would be very simple. The district court expressly instructed the jury that it should only consider the leadership enhancement, which was question six on the jury verdict form, only if it first found the defendant guilty of count two, which is the count involving J.N. Jurors are presumed to follow a court's instructions, and that's game, set, and match, if that's all that this claim was about. But the specific argument that's advanced in the defendant's brief is that the language employed by the district court in giving the leadership enhancement, specifically the reference to coercion, that that prejudiced him on the question of guilt. And no objection was made to that after the instruction was given. In fact, I point to what happened when the government noted its objections to the instructions. Defense counsel then said, I want to renew my request for bifurcation. The judge then said, I know what you're talking about. Your rights are saved. At no point did defense counsel say, no, your honor, now you've said something in the jury instruction. That reference to coercion prejudices me on guilt. No objection was raised to that. And that's why, because the issue was not brought to the district court's attention, because the district court was not given the opportunity to remedy any possible error in that regard, that's why it should be on plain error review. And as we noted in our brief, because the plain error review standard isn't argued, it's further waived. But I'm sorry. Is there some prejudice potential in this whole procedure, merely by having the jury. Hear instructions and have its mind brought to bear on the question of sentencing leadership enhancement, when what it's supposed to be doing is deciding guilt or innocence. I think in taking a step back from this particular case, Judge Kayada, I think there is that risk. And I think that's why the government has repeatedly objected to this, the procedure employed by the district court at sentencing. In our view, it's inconsistent with the Booker remedial remedy because it treats the it treats the sentencing procedure and the enhancements as if the sixth amendment claim hadn't been remedied. It's inconsistent with the guidelines commentary, which say that enhancements should be decided by a judge under a preponderance of the evidence standard. And I think that, you know, in fairness to the argument made by my friend, this is a unique procedure that's employed by the district court. And issues like this don't arise in the other sessions in the district court of Massachusetts. So if we were to find that it's inherently prejudicial to be having the jurors adjudicate or believe they're adjudicating and hear instructions on sentencing issues while they're still deliberating and tell it guilt or innocence. And that would actually end up curing the government's problem in other cases. That's true, Judge Kayada. I would point out, though, two points with respect to that. And notwithstanding our objective or our objection to the procedure employed, the that sort of larger claim hasn't been raised by the defendant in this case, that the procedure is I think it's inherently prejudicial. It's a more directed challenge. And I do think that the district court did instruct the jury. As I said, the district court did say that it should only get to question six if it first, in fact, said twice. It first said, if you find the defendant not guilty on all counts, then you don't consider question six. It then said, in fact, you have to find a defendant specifically guilty with respect to J.N. And only then do you get to question six. So in when that's taken in conjunction with the totality of the instructions given by the district court, where he repeatedly said that he was not commenting on the evidence, that the jurors were the sole judges of the evidence. When those instructions are taken as a whole, as they must be, we would say that the defendant cannot show reversible error in this particular case. Does this procedure of not bifurcating them and having the jury consider both issues at the same time create an opportunity or possibility of compromised verdicts where jurors on the fence on guilt or innocence could say, well, OK, I'll go along with the guilty vote as long as we say no on the leadership enhancement? I would I would say, just chaotic that I that would you would almost be presuming that a jury in that in that situation would not be in following the instructions given by the court, which which I don't think I there's certainly nothing that suggests that's what the jury did here. In fact, I would note that the jury actually reached a discriminating verdict because it acquitted the defendant on count one of the of the second superseding indictment. So there's nothing that suggests that was the case here. That that said, I mean, I I'm in the unusual position of defending the judgment below. And at the same time, noting that we do think that the procedure employed by the district court is is misguided and not just misguided, but is inconsistent both with remedial book booker and with the guidelines themselves. Are there other facts that might be found by a jury? Aren't there other facts that that might be found by a jury that then also become sentencing considerations subject to the lesser burden? So what I'm really getting at is, is the real problem here the the mention of sentencing? I think. Well, I think that there's there's that aspect, Judge Howard, and I think it's also the as at least as I understand, from the from the defendant's argument, it's the specific reference to the word, the evidence, of course, from the from the jury. I'm just getting at the government's complaint about the process. I think our complaint is that when the Supreme Court made the guidelines advisory in Booker, it solved the constitutional problem that had been presented in that case. I would direct your court the specific language in Booker itself. The court says, for example, and thirty five fifty three a one when it says the court shall consider the history and characteristics and the nature and circumstances of the of the offense and the history and characteristics of the defendant. The Supreme Court said that the court in context means the court acting alone, not in conjunction with the jury. And then the guidelines, you know, it's the commentary made clear that enhancements. And when you get to chapter three of the guide, chapter three of the guidelines, those considerations are done under a preponderance by the court under a preponderance of the evidence standard. And I think taking a further step back as a practical matter, it really takes the probation office out of the process. I mean, in an ordinary case, you get the presentence report and the probation offices. The first one that comes up with a recommendation as to whether a particular enhancement or an adjustment can be made. The parties then note objections and the court then has an probation office response. And the court then has a complete record on which to make that determination here. That question has to be made during the trial itself before the probation office is involved, because the question is sent to the jury. And I direct your the court's attention to page 17 of the presentence report, because there are two footnotes that make clear that the probation office actually believed that other enhancements or potentially a higher increase in the level should be made. But note that basically said it's left to the discretion of the district court because, of course, those weren't presented to the jury under the district court's procedure. So for all those reasons, we believe that this procedure is misguided, although. It does not render the judgment infirm in this case. Let me before you leave, ask Judge Lopez if he has any questions of you. Thank you. I do have a question. Counsel, I'm sorry about this disembodied voice, but I hope you can hear me. This goes to your insistence on plain error review. Isn't it a fair statement that the language that we have been talking about, the language that went to the enhancement, that would not have mattered if the judge had accepted the argument of defense counsel that there should be bifurcation here. It's only because the jury heard that reference to coercion before it even addressed the issue of guilt or innocence that that language mattered. So to suggest that the arguments as to bifurcation and the language of the instruction are completely distinct sounds to me a little bit artificial. So I guess I'm asking I'm questioning whether plain error review really should apply here. Judge Lopez, I would have two answers to that. First is that if you if you look at the transcript, the request for bifurcation was just for the jury's deliberations. It wasn't that there be separate instructions and deliberations. So in that sense, in response to your question, no, I don't see anything from the record that indicates defense counsel asked that instructions and deliberations be bifurcated. So I don't think that it makes it different. And then again, to go further again, when when the judge Young said, I understand your argument, your rights are saved. That's precisely the point at which defense counsel should have said, no, it's it's different now. You've now made a comment in counsel's view that prejudices me on guilt. And that's why you now need to either bifurcate the case or ask for some other remedy or a cautionary instruction or something to cure the prejudice that was made. The district court, it's quite clear, simply thought that defense counsel was reasserting his earlier objection. He did not. He was never put on notice that something had changed once the instructions had been given. And that and again, because he wasn't so informed, he had no opportunity to take any corrective action. And that's precisely the kind of situation in which plain error comes into play. Final question, whether whether our standard of review is plain error or abuse of discretion. That doesn't matter in terms of the the harmless error issue that we might address. The prejudice analysis remains the same. Is that is that correct? Absolutely. Whether or not this is viewed as third or fourth prong prong or plain error or under the that it's highly probable that the jury would have reached the same verdict. We think the evidence of this case is overwhelming and establishes that the jury would have reached the same verdict. All right. Thank you. No more. No more questions. Thank you. Thank you, Attorney Feldman Rumpler, please. Thank you. My apologies for not having this before, but the reference to sentencing is found at the record appendix at page 978 toward the bottom of the page, continuing on to 979. I do like I do. How do I say this? I think it would be a good rule for this court to set, and it is within the court supervisory powers to say that in any case where there is a sentencing enhancement instruction being given to the jury, there should be bifurcation. And it wouldn't be the first time that a court did that. There are cases cited in my brief where courts have said exactly for that reason. We're setting a rule when you find when you've got an issue of forfeiture, you have to separate it. You don't do that before you found guilt. You have separate processes. The other thing I wanted to address is the government saying that something had changed after the instructions. I would respectfully disagree. Nothing changed because there was a charging conference where the request for bifurcation was made. There was a thorough discussion of that instruction at the charging conference. The bifurcation request was made in light of all of the things that were going to come out regarding the penalty, and it's a very narrow reading of that request to say it was only deliberations. It wasn't instructions. That's not really how it came. On page two of my reply brief, I quote the entire thing, and he says, I'm asking the court to bifurcate the enhancements. Later on, he does say, I hope your honor would allow the jury to first deliberate on the question of guilt or innocence. He doesn't specifically say whether he's asking the court to separately instruct or simply have the jury separately deliberate. But he's asking for a separation, and the court knows why. And he alluded to death penalty cases. They explain why. There are no other questions. I'll rest on my brief. Judge Ruppes, do you have any further questions? No questions. Thank you. Thank you.